UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA D.,

Plaintiff,

v.

FRANK BISIGNANO,[1] Commissioner of Social Security,

Defendant.

---

**DECISION and ORDER**

**24-CV-795-LGF**
(**consent**)

APPEARANCES:

FREDERICK LAW OFFICES, PLLC
Attorneys for Plaintiff
SARAH A. FREDERICK, of Counsel
4467 South Buffalo Street
Orchard Park, New York 14127

MICHAEL DiGIACOMO
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
and
JONATHAN MICHAEL KING
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of Program Litigation
OFFICE 2
6401 Security Boulevard
Baltimore, Maryland 21235

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 3, 2026, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 25). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 12, 2025 (Dkt. 13), and by Defendant on April 29, 2025 (Dkt. 17).

**BACKGROUND**

Plaintiff Patricia D. ("Plaintiff"), brings this action under Titles II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on October 18, 2021, for Social Security Disability Insurance Benefits under Title II of the Act ("DIB" or "disability benefits"). AR[2] at 292-306. Plaintiff alleges she became disabled on July 8, 2021, based on mixed connective tissue disease, lupus, fibromyalgia, degenerative disc disease of the cervical and lumbar spines, osteoarthritis of the left knee, parotitis (painful swelling and inflammation of the salivary glands), pancreatitis, optic neuritis (inflammation of the optic nerve disrupting visual signals sent from the eye to the brain), Raynaud's type symptoms (narrowing of blood vessels in extremities in response to cold temperatures restricting blood flow to fingers and toes), and transient ischemic attack (temporary blockage of blood flow to part of the brain

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on October 28, 2024, in three volumes (Dkts. 3, 4, and 5).

causing stroke-like symptoms without leaving permanent damage). AR at 328. Plaintiff's application initially was denied on March 23, 2022, AR at 202-15, and upon reconsideration on May 9, 2022. AR at 216.

Plaintiff timely filed a request for an administrative hearing ("hearing"), AR at 220-21, which was granted with the hearing held via teleconference on March 16, 2023, before Administrative Law Judge ("ALJ") Tracy LaChance ("the ALJ"), in Buffalo, New York. AR at 116-53. Appearing and testifying at the hearing by telephone were Plaintiff, represented by Sarah Ann Frederick, Esq., with impartial vocational expert ("VE") Richard Barry Hall ("the VE") also appearing and testifying by telephone. On August 16, 2023, the ALJ issued a decision denying Plaintiff's claims, AR at 8-27 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 289-91. On November 14, 2023, the Appeals Council acknowledged receipt of additional evidence which was made part of the administrative record. AR at 28-115. On June 25, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision, rendering it the Commissioner's final decision. AR at 1-7. On August 27, 2024, Plaintiff commenced this action seeking review of the ALJ's decision denying Plaintiff disability benefits.

On March 12, 2025, Plaintiff moved for judgment on the pleadings (Dkt. 13) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum"). On April 29, 2025, Defendant moved for judgment on the pleadings (Dkt. 17) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of His Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 17-1)

("Defendant's Memorandum"). Filed on July 15, 2025, was Plaintiff's Reply (Dkt. 24) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion should be DENIED; Defendant's Motion should be GRANTED.

## **FACTS**[3]

Plaintiff Patricia D. ("Plaintiff"), born January 12, 1967, was 54 years old as of her alleged disability onset date ("DOD") of July 8, 2021, and 56 years old as of August 16, 2023, the date of the ALJ's decision. AR at 11, 292, 295, 297, 325. Plaintiff lives in a house with her husband, has two adult children, AR at 123, graduated from high school where she attended regular classes, AR at 124, 329, attended college for one year, *id*., but has not completed any specialized job training, trade school, or vocational school, and has not served in the military. *Id*. Plaintiff has a driver's license and can drive, AR at 124, 355. Plaintiff's daily activities include walking, shopping, household chores, attending church, exercising, watching television, and reading. AR at 347, 355-57. Plaintiff socializes in person, on the telephone, through texting, and by video chat with her parents and friends. AR at 357. Plaintiff can handle money including paying bills, counting change, and can handle and use savings and checking accounts. AR at 355. Plaintiff does not need any help with self-care or grooming. AR at 354. 356. Plaintiff's past relevant work includes working as a baker and in customer service at a bakery, a

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

laundry aide in a nursing home, a team leader in a fast food establishment, and, most recently, as a recruiter for an employment agency. AR at 329-30.

It is undisputed that Plaintiff has a history of several physical impairments for which she has been treated by various medical providers. In particular, on January 31, 2020, Plaintiff commenced treatment at Rheumatology Consultants of WNY, P.C. ("Rheumatology Consultants"), where she saw rheumatologist Michael Weingarten, M.D. ("Dr. Weingarten"), for multiple complaints of whole body pain. AR at 850-944. Dr. Weingarten diagnosed Plaintiff with unspecified myalgia, neuropathy, fibromyalgia, and myositis (muscle inflammation). AR at 938.

In 2010, Plaintiff underwent left shoulder arthroscopy surgery at Buffalo Surgical Center.[4] AR at 110, 447, 953. In March 2019, Plaintiff underwent left knee arthroscopy performed by Dr. Szarzanowicz for complaints of stiffness consistent with osteoarthritis and was diagnosed with knee degeneration. AR at 853, 855, 887, 937. Plaintiff underwent bilateral wrist/hand surgery consisting of endoscopic carpal tunnel release performed by surgeon Kory B. Reed, M.D. ("Dr. Reed"), on July 8, 2020 (right wrist/hand), and July 22, 2020 (left wrist/hand). AR at 454-57, 487, 533.

Plaintiff's primary care physician is Lailah S. Omar, M.D. ("Dr. Omar") at Buffalo Medical Group ("BMG") in Orchard Park, New York. AR at 334-35, 726-830, 996-1059, 1155-73, . Since July 7, 2021, Plaintiff received mental health treatment for anxiety and depression at Western New York Trauma Collaborative ("WNY Trauma") where she was regularly treated by licensed clinical social worker ("LCSW") Susan F. Yeager ("LCSW

[4] The date of Plaintiff's shoulder surgery is also reported as June 2009. AR at 834. No records from Plaintiff's shoulder surgery are in the administrative record.

Yeager").[5] AR at 945, 1247. As of January 26, 2022, LCSW Yeager had 13 in-person or telephone counseling sessions with Plaintiff, and diagnosed Plaintiff with generalized anxiety disorder which LCSW Yeager, in a treating source statement ("Yeager's statement"), opined interfered with Plaintiff's ability to work. *Id*.

In connection with her disability benefits application, on February 28, 2022, Plaintiff underwent an internal medicine examination by consultative physician Hongbiao Liu, M.D. ("Dr. Liu"), whose remarkable findings included that Plaintiff can walk on heels and toes with moderate difficulty, squat to 40% because of pain, decreased range of motion throughout Plaintiff's spine, positive straight leg raising test ("SLR"), and 12 "trigger points" (tight, sensitive knots in muscles causing pain when pressed), including six in the neck, four in the low back, two in the bilateral hips for a total of 12 trigger points. AR at 952-55. The rest of the examination was within normal limits and Dr. Liu diagnosed Plaintiff with a history of a sleep apnea with CPAP machine, arthritis, autoimmune disease, fibromyalgia, renal syndrome, and connective tissue disorder status post left knee, bilateral wrist, and left shoulder surgery, high blood pressure, shortness of breath and optic neuritis (inflammation of the optic nerve), both of which were stable, and pancreatitis and irritable bowel syndrome, both resolved. *Id*. at 955. Dr. Liu listed Plaintiff's current medications to include sucralfate (ulcers and gastrointestinal conditions), venlafaxine (antidepressant and antianxiety), hydroxychloroquine (lupus and rheumatoid arthritis), Protonix (prescription antacid), Flexeril (muscle relaxant for muscle spasms and pain), and gabapentin (nerve pain). AR at 953. Dr. Liu assessed Plaintiff's prognosis as 'fair" and provided a medical source

[5] No treatment records from either WNY Trauma or LCSW Yeager are in the administrative record.

statement including mild-to-moderate limitations for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged standing and walking, and climbing stairs. *Id*.

Also on February 28, 2022, Plaintiff underwent a psychiatric evaluation by consultative psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), who found Plaintiff without any mental limitations, AR at 948-49, and diagnosed Plaintiff with unspecified anxiety disorder with panic attacks for which cannabis was currently prescribed. AR at 950. Dr. Santarpia listed Plaintiff's current medications as sucralfate, venlafaxine, hydroxychloroquine, pantoprazole,[6] cyclobenzaprine,[7] and gabapentin. AR at 947. Dr. Santarpia's medical source statement included that "[t]he results of the present evaluation do not appear to be consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis." *Id*.

On March 16, 2022, Plaintiff's medical records were reviewed by State agency medical consultants D. Miller, D.O. ("Dr. Miller"), and M. Woogen, Psy.D. ("Dr. Woogen"), in connection with the SSA's review of Plaintiff's disability benefits application, AR at 162-72. Relevantly, Dr. Miller opined that because of Plaintiff's physical impairments, Plaintiff can occasionally lift and/or carry 20 lbs., frequently lift and/or carry 10 lbs., stand and/or walk for a total of six hours in an 8-hour workday, and sit for a total of about six hours in an 8-hour workday. AR at 166-67. Dr. Miller also assessed Plaintiff with postural limitations including that she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl, frequently balance, and was

[6] Pantoprazole is the generic for Protonix

.

[7] Cyclobenzaprine is the generic for Flexeril.

limited as to reaching in any direction, *id*. at 167-68, but that Plaintiff retained the residual functional capacity ("RFC") for her previous job as a fast food worker and, thus, was not disabled. AR at 171.

Dr. Woogen's psychological assessment of Plaintiff determined Plaintiff has the non-severe mental impairments of anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders, AR at 163-64, which posed no limitations to the four domains of mental functioning including to Plaintiff's ability to understand, remember, and apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself. *Id*.

In connection with Plaintiff's request for reconsideration after the initial denial of her application, on June 13, 2022, Plaintiff underwent a second internal medicine examination performed by consultative physician John Schwab, D.O. ("Dr. Schwab"), whose findings were completely within normal limits and unremarkable. AR at 1134-37. Dr. Schwab diagnosed Plaintiff with connective tissue disease, fibromyalgia, degenerative disc disease, cervical and lumbar spine osteoarthritis, cervicogenic headaches, and history of lupus, pancreatitis, optic neuritis, Raynaud's disease, and TIA, assessed Plaintiff's prognosis as "fair," and provided a medical source statement of "[n]o restrictions based on the findings of today's examination." AR at 1137.

On June 15, 2022, State Agency review physician C. Li, M.D. ("Dr. Li"), confirmed Dr. Miller's assessment, AR at 188-93, and State Agency review psychologist S.Shapiro, Ph.D. ("Dr. Shapiro"), confirmed Dr. Woogen's findings. AR at 185-88.

## DISCUSSION

### 1. Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[8] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

[8] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of

1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2. Disability Determination**

The definition of "disabled" is the same for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Act as for Supplemental Security Income benefits under Title XVI of the Act. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12

---

the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found that Plaintiff meets the insured status requirements for DIB through December 31, 2026, AR at 13, and has not engaged in substantial gainful activity ("SGA") since July 8, 2021, Plaintiff's alleged disability onset date ("DOD"). AR at 13. The ALJ found Plaintiff suffers from the severe impairments of a cervical and lumbar degenerative disc disease ("DDD"), fibromyalgia, connective tissue disorder, lupus, Raynaud's syndrome, osteoarthritis of the knee, carpal tunnel syndrome ("CTS"), obesity,[9] and occipital neuralgia (headache caused by inflammation, irritation, or compression of the optic nerve), *id*., but that other medically determinable impairments including pancreatitis, dysphasia, obstructive airway disease, obstructive sleep apnea ("OSA"), anxiety, and depression do not significantly limit Plaintiff's physical or mental ability to do basic work activities and thus are not severe. *Id*. at 13-14. The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15. Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with additional limitations including that Plaintiff can stand and/or walk for six hours in an 8-hour workday, sit for six hours in an 8-hour workday, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, frequently handle and finger, and must avoid working around unprotected heights and dangerous, moving machinery, avoid exposure to greater than moderate noise, and avoid exposure to extreme cold, extreme heat, fumes, odors,

[9] Plaintiff's Body Mass Index ("BMI") ranged from 32.6, AR at 155, to 37.49, AR at 83, 1169, which is considered "severe obesity." AR at 103..

gases, and concentrated chemicals, and required lighting no brighter than in a typical office or retail setting. *Id*. at 15-20. The ALJ further found Plaintiff remains capable of performing her past relevant work as a recruiter which does not require the performance of work-related activities precluded by Plaintiff's RFC. AR at 20-21. Because the ALJ found at step 4 that Plaintiff remains capable of performing her PRW, the ALJ did not continue to step 5. Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since Plaintiff's alleged DOD of July 8, 2021, through the date of the ALJ's decision. *Id*. at 21.

**3. Analysis**

In support of her motion, Plaintiff argues the ALJ committed legal error by failing to properly evaluate Plaintiff's PRW as a recruiter as a "composite job," *i.e.*, a job containing significant elements of two or more occupations, Plaintiff's Memorandum at 12-17, failing to find any severe mental impairments and to account for any mental or social limitations in formulating the RFC, *id*. at 17-26, failing to include a sit/stand option in the RFC formulation, *id*. at 26-35, and failing to provide substantial evidence accounting for limitations attributed to Plaintiff's occipital neuralgia. *Id*. at 35-41. In opposition to Plaintiff's Motion and in support of Defendant's Motion, Defendant argues the ALJ properly evaluated the Plaintiff's mental impairments, Defendant's Memorandum at 6-15, and physical impairments, *id*. at 15-22, and properly found Plaintiff could return to her PRW as a recruiter. *Id*. at 22-24. In reply, Plaintiff argues the ALJ failed to determine that Plaintiff can perform all parts of her PRW as a recruiter which is a composite job as Plaintiff performed it, Plaintiff's Reply at 3-4, the ALJ, despite finding Plaintiff had a mental impairment, albeit, non-severe, failed to

incorporate any limitations attributed to such impairment in formulating the RFC, *id*. at 4-7, failed to include a sit/stand option in the RFC determination, *id*. at 7-11, and failed to provide any substantial evidence supporting the limitations the ALJ attributed to Plaintiff's occipital neuralgia. *Id*. at 11-14. There is no merit to Plaintiff's arguments.

**A. Composite Job**

Plaintiff argues that because her PRW as a recruiter, as performed by Plaintiff, contained elements of a sales position, the ALJ committed legal error by failing to properly evaluate Plaintiff's PRW as a "composite job" *i.e.*, a job containing significant elements of two or more occupations, including some job duties that are performed at the sedentary level of exertion while others are performed at the light exertional level. Plaintiff's Memorandum at 12-17. In opposition, Defendant argues that because the ALJ found Plaintiff retains the RFC for light work, even if the recruiter job as performed by Plaintiff was at a higher exertional level than as performed in general – sedentary – because the ALJ found Plaintiff could perform work at the higher exertional level – light – the determination that Plaintiff could work at that higher exertional level renders any error harmless. Defendant's Response at 22-24. In reply, Plaintiff maintains that to find that Plaintiff can perform the composite recruiter/sales job, the ALJ was required to find that Plaintiff can perform all parts of the sales job, but the ALJ never posed such a hypothetical to the VE thus requiring remand. Plaintiff's Reply at 3-4.

According to SSR 00-4p,[10] 2000 WL 1898704 (Dec. 4, 2000), a job definition provided by the Dictionary of Occupational Title ("DOT"), is authoritative, as is

[10] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

occupational information provided by a vocational expert and any conflicts between the two must be resolved by the ALJ at the administrative hearing. It is undisputed that Plaintiff's PRW as a recruiter, as defined by the DOT, is sedentary, yet as performed by Plaintiff, was light work. Here, the ALJ posed to the VE a hypothetical individual with the same RFC the ALJ ultimately adopted, and the VE testified that such an individual could perform Plaintiff's PRW both as defined in the DOT as well as how Plaintiff performed it. AR at 149-50. The VE testified that such a hypothetical individual would be able to perform the recruiter position as Plaintiff performed it. AR at 150. In response to the ALJ's additional questioning, the VE denied there was any conflict between the VE's testimony and the DOT's description regarding the recruiter position, *id*. at 151, nor does Plaintiff particularize any such conflict. Accordingly, there is no merit to this argument.

**B. Mental and Social Limitations**

As regard's Plaintiff's argument that the ALJ erred by failing to consider Plaintiff's mental impairments to be severe impairments, Plaintiff's Memorandum at 17-20; Plaintiff's Reply at 4-6, with which Defendant disagrees, Defendant's Memorandum at 6-15, the Second Circuit considers such errors harmless provided the ALJ proceeds with the subsequent steps of the analysis during which the effects of the subject non-severe impairments are clearly considered. *See Stanton v. Astrue*, 370 Fed.Appx. 231, 233 n. 1 (2d Cir. 2010) (noting the ALJ's decision included consideration of the combination of the plaintiff's severe and nonsevere impairments and the combined effects of all symptoms in formulating the RFC, thus rendering harmless any error by the ALJ in failing to consider the plaintiff's neuropathy a severe impairment); *Brenda D. v. Comm'r of Soc. Sec.*, 2021 WL 1856905, at * 4 (W.D.N.Y. May 10, 2021) (citing *Reices-Colon v.*

*Astrue*, 523 Fed.Appx. 796, 798 (2d Cir. 2013) (because the ALJ specifically considered the plaintiff's anxiety and panic attacks during the subsequent steps of the sequential analysis, any error at step 2 in failing to find such impairments were non-severe was harmless)). Here, as required, the ALJ specifically stated that although she considered Plaintiff's mental impairments of anxiety and depression to be non-severe, the ALJ also stated that she considered all of Plaintiff's alleged symptoms attributed to Plaintiff's medically determinable impairments, including both severe and non-severe, when assessing Plaintiff's RFC. AR at 14. Accordingly, that the ALJ did not consider Plaintiff's mental impairment to be severe is not an error requiring remand.

Nor did the ALJ err in failing to find Plaintiff suffers from a severe mental impairment restricting Plaintiff's ability to work based on LCSW Yeager's statement, AR at 1247, that Plaintiff has been diagnosed with "generalized anxiety disorder," and that Plaintiff's "anxiety has interfered in her ability to continue to work," as Plaintiff maintains. Plaintiff's Memorandum at 20-26; Plaintiff's Reply at 6-7. The ALJ's characterization of LCSW Yeager's statement as "vague and not supported by any objective medical evidence," AR at 20, is supported by substantial evidence in the record. In particular, LCSW Yeager's statement does not specify the extent to which Plaintiff's generalized anxiety disorder 'interferes' with Plaintiff's ability to work nor in what manner Plaintiff's ability to work is affected by anxiety. *See Ana C. v. Bisignano*, 2026 WL 472588, at **6-7 (W.D.N.Y. Feb. 19, 2026) (finding the ALJ did not err in discounting Plaintiff's physicians' opinions as vague where no evidence in the record supported such opinions and the ALJ referenced numerous medical records that were contrary to the opinions).

Plaintiff also argues the ALJ erred in formulating the RFC by failing to account for any mental or social limitations attributed to Plaintiff's mental impairment. Plaintiff's Memorandum at 20-26; Plaintiff's Reply at 6-7. In particular, the ALJ's determination that Plaintiff's non-severe mental impairments caused Plaintiff no limitations in her ability to work is supported by the opinions of the consultative psychologist, as well as the State agency review psychologists, none of whom concurred with Plaintiff's assertion that her anxiety disorder is severe. *See* AR at 947-50 (Dr. Santarpia finding Plaintiff with only a mild limitation in the mental functional area of understanding, remembering, or applying information, and that the results of the evaluation were not "consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis");[11] AR at 163-64 (Dr. Woogen assessing Plaintiff with non-severe mental impairments of anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders which posed no limitations to the four domains of mental functioning); AR at 185-88 (Dr. Shapiro confirming Dr. Woogen's findings). Consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence); *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a), *Halloran v. Barnhart*, 362

[11] The court notes that Dr. Santarpia's opinion that Plaintiff does not have "any psychiatric problems that would *significantly* interfere" with Plaintiff's ability to function, AR at 950 (italics added), could be interpreted to mean that Plaintiff has psychiatric problems that interfere with her ability to function, albeit not to any significant extent, a construction with which LCSW Yeager's statement that Plaintiff has a generalized anxiety disorder that "has interfered with her ability to work" could be considered consistent.

F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). Additionally, at exams at BMG where Plaintiff received primary care, Plaintiff, despite exhibiting some anxiety or nervousness, repeatedly had normal mental status findings and reported improvement with her medications and was stable. *See*, *e.g.*, AR at 808-09 (10/20/2021 – Plaintiff's psychiatric assessment showed normal mood, behavior, and thought content); 828-29 (12/1/2021 – Plaintiff reported improved mood, reduced stress, family support); and 1155 (5/27/2022 – Plaintiff reported she "feels good in her personal life" with good and supportive family relationships). At an examination at BMG on November 30, 2021, Plaintiff's anxiety was described as "low-level." AR at 977. Nor is there any evidence in the record that Plaintiff's mental impairment had more than minimal impact on Plaintiff's activities of daily living. *See Dawn C. v. Comm'r of Soc. Sec.*, 2023 WL 2307886, at *7 (W.D.N.Y. Mar. 1, 2023) ("[I]f a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions.") (citing cases), *aff'd sub nom. Cardin v. Comm'r of Soc. Sec.*, 2024 WL 2180216 (2d Cir. May 15, 2024). The ALJ thus did not err by failing to incorporate into the RFC formulation any limitations attributed to Plaintiff's mental impairment.

If, as Defendant argues, Defendant's Memorandum at 12, LCSW Yeager's statement is intended to establish that Plaintiff's mental impairment renders Plaintiff unable to work, such determination is reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i) (providing the weight of statements regarding whether a claimant is able to work is specifically reserved for the Commissioner); *Michael M. v. Commissioner*

*of Social Security*, 2021 WL 1169190, at * 5 n. 9 (W.D.N.Y. Mar. 29, 2021) ("[D]eterminations regarding disability are reserved to the Commissioner.").

Furthermore, the ALJ was not required to obtain LCSW Yeager's treatment notes to properly develop the record as Plaintiff's argues. Plaintiff's Memorandum at 21-22. To the contrary, the burden lies with the plaintiff, not the Commissioner, to provide evidence establishing the RFC. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also* *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry...."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). It is only where there is a gap in the record that the ALJ is required to develop the record by obtaining additional records and any other evidence that may be material at the administrative hearing. *See Ariel P. v. Commissioner of Social Security*, 2023 WL 2364812, at * 7 (W.D.N.Y. Mar. 6, 2023) ("[T]he ALJ is not required to seek additional evidence when the record is 'adequate for [the ALJ] to make a determination as to disability.'" (quoting *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (bracketed material in *Ariel P.*) (further internal quotation omitted)). "A record is adequate to make a determination where there are no 'obvious gaps,' and a 'complete medical history' exists." *Id*. (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). In the instant case, the administrative record includes a letter dated March 9, 2023, from Plaintiff's counsel to the ALJ advising Plaintiff's counsel was in the process of obtaining Plaintiff's treatment records from LCSW Yeager which would be forwarded to the ALJ when received, but the administrative record is bereft of any requests from Plaintiff's counsel to the ALJ to help obtain additional records. *Id*. at * 8 (citing *Jordan v.*

*Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. 2005) (finding no error where additional records were never submitted, despite claimant's counsel advising the ALJ of missing records and obtaining additional time, but never seeking assistance from the ALJ to obtain the records). Nor has Plaintiff provided any description of how the allegedly missing records would support her disability benefits claim. *See Aman v. Colvin*, 46 F.Supp.3d 220, 225 n. 2 (W.D.N.Y. 2014) ("[P]laintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative."). Accordingly, the record establishes the ALJ properly analyzed the opinion evidence and the other evidence of record regarding Plaintiff's mental impairment, including Plaintiff's generalized anxiety disorder, and did not err by failing to include limitations attributed to any mental impairment when developing Plaintiff's RFC.

**C. Sit/Stand Option**

As regards Plaintiff's argument that the ALJ erred in failing to include in the RFC formulation that Plaintiff needed to be allowed to sit and stand at will ("sit/stand option"), Plaintiff's Memorandum at 26-35; Plaintiff's Reply at 7-11, as Defendant argues, Defendant's Memorandum at 16, there is no evidence in the record from any of Plaintiff's medical providers, consultative physicians, or State agency physicians supporting Plaintiff's assertion that she required a sit/stand option to work. Rather, the only mention in the administrative record of a sit/stand option is found in consultative physician Dr. Liu's recitation of Plaintiff's complaint made on February 28, 2022 at Dr. Liu's internal medical examination. AR at 952. In particular, Dr. Liu reported that Plaintiff claimed she needed to "change position 10 minutes while sitting or standing."

*Id*. Dr. Liu's medical source statement, however, is that Plaintiff "has mild-to-moderate limitations" for prolonged walking and standing, and is silent as to any need for Plaintiff to change position at will. AR at 955. It is significant that self-reported symptoms are not objective medical findings and thus are not substantial evidence. *See Tricarico v. Colvin*, 681 Fed.Appx. 98, 101 (2d Cir. 2017) ("[T]he ALJ's task is to consider the extent to which his self-reported symptoms could 'reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'" (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Because Plaintiff's self-reported need for a sit/stand option is not supported by any objective medical findings in the record, the ALJ did not err by failing to include such limitation in the RFC formulation. There thus is no merit to this argument.

**D. Occipital Neuralgia**

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 35-41, Plaintiff's Reply at 11-14, that the ALJ erred by failing to provide substantial evidence accounting for limitations attributed to Plaintiff's headaches attributed to occipital neuralgia.[12] According to Plaintiff, because no medical opinion indicates Plaintiff's headaches caused by occipital neuralgia pose any limitations, the ALJ should have further developed the record by obtaining an opinion regarding Plaintiff's headaches. *Id*. at 40-41. In opposition, Defendant argues that not only were no limitations assessed by Drs. Liu, Schwab, Miller and Li based on Plaintiff's occipital neuralgia headaches, but Plaintiff does not specify what limitations the ALJ should have included to account for

[12] Such limitations include that Plaintiff avoid working around unprotected heights and dangerous moving machinery, exposure to no greater than moderate noise, avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, gases, and concentrated chemicals, and no lighting brighter than a typical office or retail setting. AR at 15-16.

such headaches. Defendant's Memorandum at 19-20, nor was the ALJ required to further develop the record by requesting a medical opinion on the impact of Plaintiff's occipital neuralgia headaches on her ability to work. *Id*. at 20-21. Plaintiff's argument on this point fails.

First, as Defendant argues, Defendant's Memorandum at 19-20, no medical evidence in the record supports or even suggests that Plaintiff's occipital neuralgia headaches posed any limitations on Plaintiff's ability to perform SGA, including Plaintiff's PRW. Relevantly, the ALJ is not required to obtain any medical opinion where there is no evidence establishing the Plaintiff is experiencing any symptoms from a claimed impairment. *See Lewis v. Colvin*, 548 Fed.Appx. 675, 678 (2d Cir. 2013) (ALJ not required to accept the plaintiff's claims or impairment that are based only on the claimant's subjective complaints). Further, because the ALJ nevertheless included limitations to accommodate Plaintiff's occipital neuralgia headaches, even if such limitations were erroneous, at most the result was a more limited RFC formulation resulting in a reduction in the number of jobs Plaintiff's could perform and, thus, only harmless error. *See Ellen A. v. Saul*, 2021 WL 1087949, at *4 (W.D.N.Y. Mar. 22, 2021) (even if the ALJ errs by formulating an RFC that is technically unsupported by the record because it assesses greater limitations than contained within the medical opinions of record, such error is harmless); *Smith v. Comm'r of Soc. Sec*., 2020 WL 4333340, at *3 n. 2 (W.D.N.Y. Jul. 28, 2020) (noting "Plaintiff also appears to take issue with how the ALJ evaluated the opinion of the non-examining state agency consultant, but precisely what fault Plaintiff finds is not clear. As far as the Court can tell, it appears that the ALJ found Plaintiff to be more limited than the state agency consultant."); *Wynn v. Comm'r of*

*Soc. Sec.*, 342 F.Supp.3d 340, 347-48 (W.D.N.Y. 2018) (finding the ALJ properly assigned "little weight" to the opinions of consultative medical sources that included fewer mental and physical work-related limitations than the ALJ included in the RFC assessment). Plaintiff's Motion thus fails on this argument.

To summarize, here, there are no issues of fact which, if decided in the Plaintiff's favor, would compel a reasonable factfinder to reach a determination contrary to the ALJ's decision. *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59. Under this "very deferential standard of review," *Brault*, 683 F.3d at 448, the ALJ's decision that Plaintiff was not disabled between the date of her disability benefits application and the date of the ALJ's decision is supported by substantial evidence in the record, and no remand for consideration of any additional records is warranted.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 13) is DENIED; Defendant's Motion (Dkt. 17) is GRANTED. The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 10, 2026
Buffalo, New York